503 P.2d 1213

**Norma Lee MADSEN, Plaintiff and Respondent,**

**v.**

**WALKER BANK & TRUST COMPANY, a corporation, and Draper Bank and Trust Company, a corporation, Defendants and Appellant.**

**No. 12822.**

Supreme Court of Utah.

Dec. 5, 1972.

Crockett, J., having disqualified himself, did not participate.

Edward J. McDonough, of Jones, Waldo, Holbrook & McDonough, Salt Lake City, for defendants and appellant.

Neil R. Sabin of Stringham & Follett, Salt Lake City, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from a judgment against the bank predicated on negligence in forwarding for collection only, a check on which Miss Madsen was named as payee, the maker of which was Dixie Minerals, a corporation, signed by one Hafen personally and whose title or corporate authority is not shown thereon. Reversed with costs on appeal to defendant.

The uncontradicted evidence elicited from plaintiff herself would reflect the possibility of plaintiff's having been victimized in a con game situation before she presented the check in question to the bank for collection. Prior to the circumstances immediately leading to this litigation, Miss Madsen for some reason or other loaned Hafen $5000. In May, 1969, he gave her a check drawn on a Virginia bank ostensibly in payment of the loan, which promptly bounced. In September of the same year he gave her another check on a Swiss bank, which also promptly bounced, not once, but twice. The fourth event in this saga of securities, was the check in the instant case which also bounced, under the following undenied circumstances:

On December 4, 1969, a convenient Friday and a happy day for weekend confidence transactions, at Hafen's request, who represented he wanted to pay her off, Miss Madsen met Hafen at Sugarhouse, Utah, where the defendant's branch bank was located, shortly before noon. Apparently not desiring to take a check, she asked him to pay her in cash. She testified that "He felt that this [check] was cash, since the

money was there in the [Draper] bank [and] that this would suffice, so *he suggested* that I have the *bank* [Walker] call the Draper Bank . . . *to make sure the funds were there,* just to give *me some satisfaction that it was legitimate or that* I was finally *being paid off* all these months, so I did go to the [Walker] bank and I did contact one of the officers to see what I should do or how I should go about contacting Draper Bank and I was sent to one of the tellers." [1]

Taking Hafen's advice, she walked in the bank, saw and talked to an officer, then went to a counter and endorsed 10 to 15 smaller checks to deposit in her checking account, but significantly she did not endorse the Hafen check, giving the rather novel and rather incongruous reason for such failure to endorse this check while she endorsed the others, that "over the years, I made it a practice not to endorse a check that might have to be carried around . . . in other words, if I signed a check, then, I might drop it somewhere. It might be lost, or if I would carry it around in my purse, my purse could be stolen, so I did not want to run that risk." In her conversation with the bank official she said she told him "Hallelujah, I finally got the check and *I was assured* the money was in the bank, but I wanted to make sure

*and I had been instructed* to have *the bank* call the Draper Bank."

At the instance of such conversation with the official, she was told to have the teller call the Draper Bank as she requested, to confirm the Hafen account, which was done, with a response that there were funds to cover the check. It was adjudged in another case that the funds in Hafen's account at the Draper Bank had been obtained by fraud, and were attached in a suit involving the funds in such deposit.

The teller checked the endorsements on the checks deposited by Miss Madsen in her checking account, (either failing to notice the lack of endorsement on the single check deposited for a specific purpose,—that of collection only,—or considering it wasn't necessary since it was for collection only). This check was credited to her savings account and forwarded *for collection* through channels,—clearing house and all,—and arrived over the weekend, on December 8th, at the Draper Bank, that sent it back for nonendorsement, resulting in the Walker Bank's endorsing it by stamp, and sending it back, during which interim Hafen's bank account was tied up by attachment incident to the successful fraud action brought against him by others.

This entire case is bottomed on alleged negligence of Walker to require Miss Mad-

1. After her past experience it is difficult to imagine why she took either Hafen's check or his advice, or why she did not personally and post-haste go to the Draper Bank and get the money immediately.

sen's endorsement before transmittal *for collection only.* She did not sue Hafen since she said she had gone to Hafen to tell him what had happened *"and he felt there had been negligence,"* and *he* told me that "if I had heard about it in time I should have been able to collect it" and that he told her he had gotten the funds and had the money to cover the check and that he couldn't see why he should have to pay it twice, and that "I feel that he did pay me."

■ Respondent says that under Title 70A–4–212(4)(b), Utah Code Annotated 1953, Walker Bank, in a case like this could charge back this item, in the event the check is dishonored, if it uses ordinary care in its processing, but "so failing, remains liable." Under the facts of this case, although we think it unnecessary to invoke the Uniform Commercial Code, we think there was no violation of the section mentioned, since we believe that the bank hardly can be responsible for running this check through as it did just as might a collection agency, only more quickly, perhaps, on the basis of negligence beyond that of ordinary care, when the plaintiff, who was no more than three feet away from the teller at the time of deposit and had an equal opportunity to endorse the subject check as did the teller to demand such endorsement, and that this being so, the plaintiff was not only equally guilty of negligence as was the defendant, (that apparently had no duty of requiring an endorsement in this strictly collection role) but was negligent to the point of being the sole proximate cause of the whole matter. This is particularly true in view of the fact that she had a handful of 10 to 15 other checks which she *did* endorse, and only one that she didn't, but could have endorsed along with the others,—and in light of the fact that she followed the instructions of one who had bilked her three times before; and that the bank official, who did not seek her out, simply let her use the bank's phone through the teller, to do what she could and should have done herself. As a matter of fact, the history of this case would impel the conclusion that Hafen, having duped her three times with worthless checks, plaintiff seems to have exercised a degree of negligence far in excess of ordinary care by not hastening to the Draper Bank to get her money which she could have done, instead of following a defaulter's advice, thus inducing the bank to extend what appears to be nothing but a courtesy.

■ Besides the above, Miss Madsen hardly can charge another with compensatory responsibility under the facts of this case when she herself testified that it was her *duty* to endorse the check and that she gave the bank no instructions for handling it without an endorsement, and she knew

**442**

from her pass book and its warranties specifically what her duty was in this respect.

The trial court in this case put to the jury not a question but a statement of fact to be answered "True" or "False," i. e., "The . . . Bank was negligent in accepting and in forwarding the check . . without any endorsement," to which the jury answered "True." The court refused to put the same type of statement to the jury with respect to Miss Madsen's negligence, but on the contrary held as a matter of law that the Bank's negligence was the sole proximate cause of the loss.

The recitals of fact hereinabove are elicited and abstracted from plaintiff's own evidence, which we accept as being admittedly true, and having reviewed her own evidence, we can come to no other conclusion than that plaintiff cannot employ her own obvious negligence to force another to respond in damages,—particularly when that other appears to have had no duty of exercising, at most, other than reasonable care in protecting another's interest,—as seems to be a conclusion that is inescapable here.

(Emphasis added.)

CALLISTER, C. J., and TUCKETT and ELLETT, JJ., concur.

CROCKETT, J., having disqualified himself, does not participate herein.